# EXHIBIT 1

FILED by Macomb County Circuit Court
2/9/2018 10:52 56 AM
Service, Submitted, and File

2018-000488-CB
CHALFONTE PROPERTIES INC VS. NGLS ADJUS

Original - Court
1st copy - Defendant

| 16th | JUDICIAL DISTRICT JUDICIAL CIRCUIT COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>2018-488-CB |
|---|---|---|---|

| Court address | Court telephone no. |
|---|---|
| 40 N. Main St., Mt. Clemens, MI 48043 | (586) 469-5208 |

| Plaintiff's name(s), address(es), and telephone no(s).<br>Chalfonte Properties, Inc. | v | Defendant's name(s), address(es), and telephone no(s).<br>SEATTLE SPECIALTY INSURANCE SERVICES, INC.<br>Resident Agent: CSC - Lawyers Incorporating Service Co.<br>601 Abbot Rd.<br>East Lansing, MI 48223 |
|---|---|---|

| Plaintiff's attorney, bar no., address, and telephone no.<br>BOYER, DAWSON & ST. PIERRE, PLLC<br>CECIL D. ST. PIERRE, JR (P36262)<br>CECIL D. ST. PIERRE, III (P81614)<br>43805 Van Dyke Ave., Sterling Heights, MI 48314<br>(586) 731-7400 | |
|---|---|

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>02/09/2018 | This summons expires<br>05/11/2018 | Court clerk<br>KAREN SPRANGER |
|---|---|---|

**Family Division Cases** (The following is information required in the caption of every complaint and is to be completed by the plaintiff.)
☐ This case involves a minor who is under the continuing jurisdiction of another Michigan court. The name of the court, file number, and details are on page ____ of the attached complaint.
☑ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**Civil Cases** (The following is information required in the caption of every complaint and is to be completed by the plaintiff.)
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _Macomb County Circuit_ Court.
The action ☑ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no.<br>2018-488-CB | Judge<br>Kathryn A. Viviano | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Macomb County | Defendant(s) residence (include city, township, or village)<br>New York, New York |
|---|---|
| Place where action arose or business conducted<br>Macomb County | |

| Date<br>2 \ 8 \ 17 | Signature of attorney/plaintiff |
|---|---|

If you require special accommodations to use of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01   (6/17)   SUMMONS AND COMPLAINT   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

Note to Plaintiff: The summons is invalid unless
served on or before its expiration date.

**SUMMONS AND COMPLAINT**
Case No. 2018-488-CB

**PROOF OF SERVICE**

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE**  OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint.
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,
 together with _____
                     List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complet address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled Fee $ | | Signature |
|---|---|---|---|
| Incorrect address fee $ | Miles traveled Fee $ | TOTAL FEE $ | Name (type or print) |
|  |  |  | Title |

Subscribed and sworn to before me on _____, _____ County, Michigan.
                                              Date

My commission expires: _____  Signature: _____
                              Date                          Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                          Attachments

_____ on _____
                                    Day, date, time

_____ on behalf of _____.
Signature

FILED by Macomb County Circuit Court
2/9/2018 10:52:58 AM
Service, Submitted, and File

2018-000488-CB
CHALFONTE PROPERTIES INC VS. NGLS ADJUS

## STATE OF MICHIGAN

## IN THE 16TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF MACOMB

CHALFONTE PROPERTIES, INC.,

      Plaintiff,

vs.                           Case No: 2018-488-CB
                                  Honorable: KATHRYN A. VIVIANO

SEATTLE SPECIALTY INSURANCE SERVICES, INC.,
and UNDERWRITERS AT LLOYD'S LONDON,
Jointly and Severally.

      Defendants.

_____/

BOYER, DAWSON & ST. PIERRE, PLLC
CECIL D. ST. PIERRE, JR (P36262)
CECIL D. ST. PIERRE, III (P81614)
Attorneys for Plaintiff
43805 Van Dyke Avenue
Sterling Heights, MI 48314
586-731-7400 / 731-6370 Fax
cdspjr@yahoo.com
cecil@boyerdawson.com

_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF, AND DEMAND FOR JURY TRIAL

### PARTIES, JURISDICTION, VENUE

1.    Plaintiff, CHALFONTE PROPERTIES, INC., is a for profit corporation licensed under the laws of the State of Michigan, with its principal address located at 3671 E 12 Mile Road, Warren, MI 48092 (hereinafter "Chalfonte").

2.    Defendant, UNDERWRITERS AT LLOYD'S LONDON, is a for profit corporation registered under the law of the State of New York.

3.    Defendant, SEATTLE SPECIALTY INSURANCE SERVICES, INC., is a for profit corporation registered under the law of the State of New York

1

4.  This litigation surrounds certain residential real property located in the State of Michigan, County of Wayne, and City of Detroit, commonly described as 915 Fischer, Detroit, MI 48214 (hereinafter "Fischer Property").

5.  Jurisdiction and venue are proper in this Court pursuant to MCL 600.605 and MCL 600.751.

6.  Jurisdiction is proper in this Court as the amount in controversy, exclusive of costs, interests, and attorneys' fees, exceeds Twenty-five Thousand Dollars ($25,000.00).

7.  Jurisdiction is proper in this Court as Chalfonte seeks monetary damages in addition to any other legal damages to which it may be entitled.

<u>GENERAL ALLEGATIONS</u>

8.  Chalfonte incorporates by reference the preceding paragraphs as if fully set forth herein.

9.  On or about August 27, 2014, Chalfonte entered into an residential and commercial property insurance contract (hereinafter "Contract") with Defendant for coverage for the Fischer Property. (See Exhibit A - Insurance Contract)

10. The Contract provided that covered residential property losses are settled at repair or replacement costs without deduction for depreciation while commercial losses are settled at actual cash value. (Exhibit A)

11. The coverage period of the residential property insurance contract was from September 8, 2014 to September 8, 2015.

12. The Fischer Property is a 4-unit apartment complex used for residential purposes.

13. On March 19, 2014, while insured by Defendant, a theft and vandalism occurred at the Fischer Property. (See Exhibit B - Police Report)

14. On March 19, 2014, unknown person(s) removed radiators, drawer fronts, cabinets, bathtubs, lockets, doors, plumbing fixtures, 520' of plumbing, a counter top, drawer and caused damage to doors in order to gain access to the risk. Unknown person(s) also caused damage to walls, cabinets, ceramic tile, steps, counter tops, a dishwasher, vanity, commode and caused damage to handrails while attempting to remove them. (See Exhibit C - Claim Adjustment)

2

15. A long term leak in the plumbing supply resulted in damage to ceilings and walls.

16. On August 22, 2014, Chalfonte filed a claim for theft and vandalism that occurred on March 19, 2014 and for the long term plumbing leak.

17. On January 21, 2016, the Defendants issued a check to Chalfonte in the amount of $20,397.04, the actual cash value replacement costs for a commercial property under the Contract, which has not been negotiated because Plaintiff informed Defendant he did not agree with Defendant's settlement of the claim.

18. Chalfonte's claim showed repair and replacement costs far exceeding that of $20,397.04, the actual cash value settlement provided by Defendant.

<u>COUNT I - BREACH ON CONTRACT</u>

19. Chalfonte incorporates by reference the preceding paragraphs as if fully set forth herein.

20. On or about August 27, 2014, Chalfonte entered into an residential and commercial property insurance contract (hereinafter "Contract") with Defendant for coverage for the Fischer Property. (Exhibit A)

21. The Fischer Property is a 4-unit apartment complex used for residential purposes.

22. The Contract provided that covered residential property losses are settled at repair or replacement costs without deduction for depreciation while commercial losses are settled at actual cash value with a deduction for depreciation. (Exhibit A)

23. On March 19, 2014, while insured by Defendant, a theft and vandalism occurred at the Fischer Property. (See Exhibit B - Police Report) .

24. On January 21, 2016, the Defendant issued a check to Chalfonte in the

25. The losses the Plaintiff incurred as a result of the theft, vandalism and long term plumbing issue were over $20,397.04, the actual cash value replacement costs for a commercial property under the Contract.

26. Defendant has breached the contract because they refuse to pay the Plaintiff the amount that is due under the claim.

27. The Plaintiff, Chalfonte, has been damaged in excess of $25,000.00.

3

## RELIEF REQUESTED

Plaintiff requests that this Honorable Court award Plaintiff damages in excess of $25,000.00 and any other relief this court deems necessary, including cost and attorney fees.

Dated: February 9, 2018                    Respectfully submitted,

                                           BOYER, DAWSON & ST. PIERRE, PLLC


                                           CECIL D. ST. PIERRE, JR. (P36262)
                                           CECIL D. ST. PIERRE, III (P81614)
                                           43805 Van Dyke Ave.
                                           Sterling Heights, MI 48314
                                           (586) 731-7400
                                           cdspjr@yahoo.com
                                           cecil@boyerdawson.com


## DEMAND FOR JURY TRIAL

NOW COMES the above named Plaintiff, by and through their attorneys, BOYER, DAWSON & ST. PIERRE, PLLC, and hereby demands a trial by jury in the above-entitled matter.

Dated: February 9, 2018                    Respectfully submitted,

                                           BOYER, DAWSON & ST. PIERRE, PLLC


                                           CECIL D. ST. PIERRE, JR. (P36262)
                                           CECIL D. ST. PIERRE, III (P81614)
                                           43805 Van Dyke Ave.
                                           Sterling Heights, MI 48314
                                           (586) 731-7400
                                           cdspjr@yahoo.com
                                           cecil@boyerdawson.com

4

# EXHIBIT A



A member of ⊕ QBE

# SEATTLE
## SPECIALTY.
INSURANCE SERVICES

## Underwriters at Lloyd's, London
*(Hereinafter called the Underwriters)*
### BLANKET MORTGAGE SECURITY CERTIFICATE
### DECLARATIONS

**Authority Reference Number:** B0753PG1401106
**Certificate No.:** 687500

**1. Named Insured Mortgagee:**
Chalfonte Properties, Inc
3671 E 12 Mile Road
Warren, MI 48092

**2. Agent/Administrator:**
Seattle Specialty Insurance Services, Inc.
PO Box 1108
Everett, Washington 98206

Breckenridge
INSURANCE GROUP

**3. Certificate Period:** From ____September 8, 2014____ To____ September 8, 2015____
(12:01 am. Standard Time at the Address of the Insured property)

**4. Property Insured:** Coverage applies only to real property upon which you have requested we provide coverage, for which you have paid a premium and in which you have an insurable interest as owner, mortgagee, trustee or as the servicing agent by written agreement. This insurance does not cover land.

**5. Coverages Provided:** All coverages, terms and conditions for residential property are as set forth in this Blanket Mortgage Security Certificate and the attached Dwelling Property 3A Amended Form. All coverages, terms and conditions for commercial property are as set forth in this Blanket Mortgage Security Certificate and the attached General Property 11A Amended Form.

**6. Maximum Amount of Insurance:** The Maximum Amount of Insurance shall be the lesser of the amount shown on your request for insurance reflected on the monthly reports described in General Provision M. of this Certificate, or $____5,000,000____ for residential property and $____5,000,000____ for commercial property.

**7. Premium Rate:** The premium for each insured property shall be computed by applying the following rate per hundred per year to the Amount of Insurance applicable to each insured property.

| | |
|---|---|
| Residential Property - Occupied.............................................................. | **$0.52 per $100** |
| Residential Property - Vacant................................................................. | **$0.52 per $100** |
| Residential "Real Estate Owned" Property - Occupied................................ | **$0.52 per $100** |
| Residential "Real Estate Owned" Property – Vacant................................... | **$0.52 per $100** |
| Commercial Property –Occupied............................................................. | **$0.52 per $100** |
| Commercial Property –Vacant................................................................ | **$0.52 per $100** |
| Commercial 'Real Estate Owned' Property –Occupied................................ | **$0.52 per $100** |
| Commercial 'Real Estate Owned' Property - Vacant................................... | **$0.52 per $100** |
| Commercial Business Property................................................................ | **$1.50 per $100** |
| Manufactured Housing............................................................................ | **$1.50 per $100** |
| Contingent Mortgagor's Coverage.......................................................... | **$0.52 per $100** |

ADDITIONAL RATES APPLY. SEE CGI05 FOR DETAILS

**8. Endorsements Attached to and Forming a Part of Certificate At Time of Issue:**

CGI01(07/07), CGI02(12/06), CGI03(10/06), CGI05(10/06), CGI06(10/06), CGI08(10/06), CGI10A(10/06), CGI11A(10/06), CGI12A(03/09), CGI13A(06/08), CGI14(10/06), CGI17A(10/06), CGI19(10/06), CGI20(10/06), CGI21(10/06), CGI22(07/07), CGI24(01/08), CGI25A(04/08), CGI26A(04/08), CGI27A(04/08), CGI28(01/10), CGI30(02/09), CGI36(09/09), LMA5018, LMA5019, LMA5092, LMA3100

Date Countersigned: ____August 27, 2014____                By: *Richard E Preash*
                                                                    Authorized Representative

CGI 00 (12/07)



# Lloyd's Certificate

This Insurance is effected with certain Underwriters at Lloyd's, London.

This Certificate is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

The Assured is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

SLC-3 (USA) NMA2868 (24/08/00)  Form approved by Lloyd's Market Association

## CERTIFICATE PROVISIONS

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3. **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 6 of the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

   The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

5. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

7. **Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

Short Rate Cancellation Table For Term of One Year.

| Days Insurance in Force | Per Cent of one-year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5½% | 66 – 69 | 29% | 154 – 156 | 53% | 256 – 260 | 77½% |
| 2 | 6 | 70 – 73 | 30 | 157 – 160 | 54 | 261 – 264 | 78 |
| 3 – 4 | 7 | 74 – 76 | 31 | 161 – 164 | 55 | 265 – 269 | 79 |
| 5 – 6 | 8 | 77 – 80 | 32 | 165 – 167 | 56 | 270 – 273 ( 9 mos ) | 80 |
| 7 – 8 | 9 | 81 – 83 | 33 | 168 – 171 | 57 | 274 – 278 | 81 |
| 9 – 10 | 10 | 84 – 87 | 34 | 172 – 175 | 58 | 279 – 282 | 82 |
| 11 – 12 | 11 | 88 – 91 ( 3 mos ) | 35 | 176 – 178 | 59 | 283 – 287 | 83 |
| 13 – 14 | 12 | 92 – 94 | 36 | 179 – 182 ( 6 mos ) | 60 | 288 – 291 | 84 |
| 15 – 16 | 13 | 95 – 98 | 37 | 183 – 187 | 61 | 292 – 296 | 85 |
| 17 – 18 | 14 | 99 – 102 | 38 | 188 – 191 | 62 | 297 – 301 | 86 |
| 19 – 20 | 15 | 103 – 105 | 39 | 192 – 196 | 63 | 302 – 305 ( 10 mos ) | 87 |
| 21 – 22 | 16 | 106 – 109 | 40 | 197 – 200 | 64 | 306 – 310 | 88 |
| 23 – 25 | 17 | 110 – 113 | 41 | 201 – 205 | 65 | 311 – 314 | 89 |
| 26 – 29 | 18 | 114 – 116 | 42 | 206 – 209 | 66 | 315 – 319 | 90 |
| 30 – 32 ( 1 mos ) | 19 | 117 – 120 | 43 | 210 – 214 ( 7 mos ) | 67 | 320 – 323 | 91 |
| 33 – 36 | 20 | 121 – 124 ( 4 mos ) | 44 | 215 – 218 | 68 | 324 – 328 | 92 |
| 37 – 40 | 21 | 125 – 127 | 45 | 219 – 223 | 69 | 329 – 332 | 93 |
| 41 – 43 | 22 | 128 – 131 | 46 | 224 – 228 | 70 | 333 – 337 ( 11 mos ) | 94 |
| 44 – 47 | 23 | 132 – 135 | 47 | 229 – 232 | 71 | 338 – 342 | 95 |
| 48 – 51 | 24 | 136 – 138 | 48 | 233 – 237 | 72 | 343 – 346 | 96 |
| 52 – 54 | 25 | 139 – 142 | 49 | 238 – 241 | 73 | 347 – 351 | 97 |
| 55 – 58 | 26 | 143 – 146 | 50 | 242 – 246 ( 8 mos ) | 74 | 352 – 355 | 98 |
| 59 – 62 ( 2 mos ) | 27 | 147 – 149 | 51 | 247 – 250 | 75 | 356 – 360 | 99 |
| 63 – 65 | 28 | 150 – 153 ( 5 mos ) | 52 | 251 – 255 | 76 | 361 – 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year.

A. If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B. If insurance has been in force for more than one year:

   1. Determine full annual premium as for insurance written for a term of one year.

   2. Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.

   3. Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

This Declaration Page is attached to and forms part of Certificate provisions (Form SLC-3 USA NMA 2868)

Previous No:

B0753PG1300794

> This insurance has been placed with an Insurer that is not
> licensed by the state of Michigan.  In case of insolvency,
> payment of claims is not guaranteed.
>
> Richard E Pedack
> Seattle Specialty Insurance Services, Inc.

Authority Ref. No:

B0753PG1401106

Certificate No.

687500

1.   Name and address of the Assured:

   Chalfonte Properties, Inc
   3671 E 12 Mile Road
   Warren, MI  48092

2.   Effective

   From:   September 8, 2014
   To:   September 8, 2015

      both days at 12:01 a.m. standard time.

3.   Insurance is effective with certain UNDERWRITERS AT LLOYD'S, LONDON.

   Percentage:  100%          Syndicate #1414

4.   Amount:

   The Maximum Amount of Insurance shall be $5,000,000 per location for commercial property
   and $5,000,000 per location for residential property.

   Coverage:

   All coverages, terms and conditions for commercial property are as set forth in the attached
   General Property Policy Endorsement CGI 03. All coverages, terms and conditions for
   residential property are as set forth in the attached Residential Property Policy Endorsement
   CGI 02.

   Rate:

      See Rates stated on CGI 05(10/06)

   Premium:

      Per Individual Reporting Form
      $7,169.10 Premium
      $178.97 MI SL Tax
      $400.00 Breckls Fee

5. Forms attached hereto and special conditions:

CGI01(07/07), CGI02(12/06), CGI03(10/06), CGI05(10/06), CGI06(10/06), CGI08(10/06), CGI10A(10/06), CGI11A(10/06), CGI12A(03/09), CGI13A(06/08), CGI14(10/06), CGI17A(10/06), CGI19(10/06), CGI20(10/06), CGI21(10/06), CGI22(07/07), CGI24(01/08), CGI25A(04/08), CGI26A(04/08), CGI27A(04/08), CGI28(01/10), CGI30(02/09), CGI36(09/09), LMA5018, LMA5019, LMA5092, LMA3100

6. Service of Suit may be made upon:

> Mendes & Mount
> 750 7th Avenue
> New York, NY 10019-6829

7. In the event of a claim, please notify the following:

> Seattle Specialty Insurance Services, Inc.
> 2815 Colby Ave., Suite 200
> Everett, WA 98201
> Phone: 425-609-3500, Fax: 425-609-3555

Seattle Specialty Insurance Services, Inc.

Dated: August 27, 2014          By _____
                                        Correspondent

24/08/00
NMA2868

## BLANKET MORTGAGE SECURITY CERTIFICATE
## INSURING AGREEMENT

We will provide the insurance described in this Certificate in return for the premium and compliance with all applicable provisions of this Certificate. Coverage shall apply to all residential and commercial property for which a specific request for coverage is received from you in accordance with procedures herein defined.

## DEFINITIONS

Throughout this Certificate:

A. "You" and "yours" refer to the financial institution shown in item 1. of the Certificate Declarations as the Named Insured Mortgagee.
B. "We, "us" and "our" refer to Underwriters providing this insurance.
C. "Certificate" shall include the Blanket Mortgage Security Certificate and all coverage forms and endorsements attached.

## GENERAL PROVISIONS

A. **Term:** Coverage shall apply to each insured property from the effective date requested by you upon payment of premium. If the property afforded insurance by this Certificate is also covered by other insurance, insurance under this Certificate shall not become effective until such other insurance has terminated. This insurance does not cover land.

B. **Insured Property:** Coverage applies only to real property upon which you have requested we provide coverage, for which you have paid a premium and in which you have an insurable interest as mortgagee, or as the servicing agent by written agreement. This insurance does not cover land.

C. **Coverage Provided:** This Certificate insures against direct physical loss or damage to insured property. All coverages, terms and conditions for residential property are as set forth in this Blanket Mortgage Security Certificate and the attached Dwelling Property 3A Amended Form. All coverages, terms and conditions for commercial property are as set forth in this Blanket Mortgage Security Certificate and the attached General Property 11A Amended Form.

D. **Limits of Recovery:** Our liability shall not exceed the least of the following after application of the deductible stated in this Certificate:

1. The amount stated on the Certificate Declarations for each location of mortgaged residential and mortgaged commercial property insured by this Certificate.

2. The amount of insurance specifically requested in your application for coverage under this Certificate.

3. The settlement options stated in Dwelling Property 3A Amended Form applicable to residential property and General Property 11A Amended Form applicable to commercial property and attached to this Certificate.

E. **Deductible:** For each loss covered under this Certificate, we shall be liable for loss only in excess of the appropriate deductible specified below which shall not be recoverable under this Certificate:

1. Residential Property:
   A deductible of $250 shall apply to each covered peril or occurrence, except for the peril of Vandalism and Malicious Mischief to a vacant property for which a deductible of $500 shall apply.

2. Commercial Property:
   A deductible of $500 shall apply to each covered peril or occurrence, except for the peril of Vandalism and Malicious Mischief to a vacant property for which a deductible of $1,000 shall apply.

F. **Other Insurance:** THIS INSURANCE IS EXCESS INSURANCE. If there is any other valid and collectible insurance which would attach if the insurance provided under this Certificate had not been effected, this insurance shall apply only as excess insurance and in no event as contributing insurance, and then only after all other insurance has been exhausted.

CGI 01 (07/07)

G. **Loss Payable:** Loss, if any, shall be made payable to you as your interest appears. You hereby direct that any benefits payable in excess of your interest shall be paid to the mortgagor.

H. **Salvage and Recoveries:** When, in connection with any loss covered by this Certificate, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be refigured on the basis on which such loss would have been settled had the amount of salvage or recovery been known at the time the amount of loss was originally determined. Any amounts thus found to be due any party shall be promptly paid.

I. **Inspection and Audit:** We shall be permitted at all reasonable times to inspect the insured property and to examine your and/or the mortgagors books and records at any time during the currency of this Certificate. Within one year after final settlement of any claim we shall be permitted at all reasonable times to examine your and/or the mortgagor's books and records so far as the books and records relate to any payments made because of losses happening during the term of this Certificate. We waive no rights and undertake no responsibility by reason of such inspection or examination or the omission thereof.

We shall also be permitted at all reasonable times to audit your records to verify the number of existing loans for which renewal policies have not been received.

J. **Reinstatement:** A loss to the insured property reduces the limits of recovery by the amount of the loss, upon repair or replacement of the property, the limits of recovery will return to their original amount.

K. **Request for Coverage:** When you desire coverage on any real property in which you have an insurable interest, you will request insurance by providing us with the following information: loan number, name and address of mortgagor, address of property to be insured, class of property, effective date and amount of insurance requested. Coverage shall automatically become effective upon receipt of request for coverage and payment of premium and shall remain in force until terminated by either you or us.

L. **Cancellation:** You may cancel coverage on any individual location by notifying us of the desired effective date of cancellation but not prior to the effective date of the mortgagor's insurance which meets the requirements of your loan agreement. But no more than 120 days prior to the date of notification to us, without our approval.

You may cancel this Certificate at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect, but no more than 120 days prior to the date of notification to us, without the approval of Underwriters.

We may cancel this Certificate or coverage on any individual location by giving you at least 30 days advance written notice of the date cancellation is to take effect, with the exception of cancellation for nonpayment of premium which shall be a minimum of 10 days advance written notice.

Cancellation shall be processed immediately and any return premiums shall be reflected in the next monthly report and premium billing.

M. **Reports and Premium Billings:** Within 10 days of the last day of each month, you will provide a complete listing of all properties upon which coverage is requested. The report shall contain loan number, name and address of mortgagor, insured property address, class of property, coverage effective date, amount of insurance requested, cancellation date (if applicable). If you are required to calculate premium, payment of total net premium is due and payable with this report.

In Witness Whereof, Underwriters have caused this Certificate to be executed and attested by their Authorized Representative.

Date Countersigned: _____August 27, 2014_____        By: _____

Authorized Representative

CGI 01 (07/07)

DWELLING PROPERTY 3A
AMENDED FORM (10/06)

## AGREEMENT

We will provide the insurance described in this Certificate in return for the premium and compliance with all applicable provisions of this Certificate.

## DEFINITIONS

Throughout this Certificate, "you" and "your" refer to the Named Insured Mortgagee shown in the Declarations. "We", "us" and "our" refer to the Underwriters providing this insurance.

## COVERAGES

This insurance applies to the insured property. This insurance does not cover land.

### COVERAGE A - DWELLING

We cover:

*Coverage*

a) the dwelling, used principally for dwelling purposes;

b) structures attached to the dwelling;

c) materials and supplies on or adjacent to the requested location for use in the construction, alteration or repair of the dwelling or Other Structures on this location; and

d) building equipment and outdoor equipment used for the service of and located on the requested location.

### COVERAGE B - OTHER STRUCTURES

We cover Other Structures on the requested location, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line or similar connections are considered to be Other Structures. You may use up to 10% of the Coverage A Limit of Recovery for loss by a Peril Insured Against to Other Structures described in this Coverage B. Payment under this coverage reduces the Coverage A Limit of Recovery.

We do not cover structures:

a) used in whole or in part for commercial, manufacturing or farming purposes; or

b) rented to or held for rental for any person not a tenant of the dwelling, unless used solely as a private garage; or

c) such as fences, satellite dishes, antennas, or radio and television towers separated from the dwelling.

### OTHER COVERAGES

1. **Debris Removal-** We will pay the reasonable expenses incurred for the removal of debris from a property loss covered by this Certificate. Payment under this coverage reduces the Limit of Recovery applying to the damaged property.

2. **Reasonable Repairs-** We will pay the reasonable cost incurred for necessary repairs made solely to protect the property covered by this Certificate from further damage if there is coverage for the peril causing the loss. Payment under this coverage reduces the Limit of Recovery that applies to the property being repaired.

CGI 02 (12/06)                                                    1

## PERILS INSURED AGAINST

## COVERAGE A- DWELLING & COVERAGE B- OTHER STRUCTURES

We insure for risk of direct physical loss to the insured property described in Coverages A and B except:

1. losses excluded under GENERAL EXCLUSIONS;

2. freezing of a plumbing, heating, air conditioning system, automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within such system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless reasonable care has been taken to:

    a) maintain heat in the building, or

    b) shut off the water supply and drain the system and appliances of water;

3. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to Other Structures;

4. theft of any property which is not actually part of any dwelling or other structure covered;

5. theft in or to a dwelling or other structure under construction;

6. wind, hail, ice, snow or sleet to outdoor radio and television antennas and aerials including their lead-in wiring, masts or towers;

7. continuous or repeated seepage or leakage of water or steam over a period of time from within a plumbing, heating or air conditioning system or from within a household appliance;

8. a) wear and tear, marring, deterioration;

    b) inherent vice, latent defect, mechanical breakdown;

    c) smog, rust or corrosion, mold, wet or dry rot;

    d) smoke from agricultural smudging or industrial operations;

    e) discharge of, dispersal, seepage, migration, release or escape of pollutants.
    Pollutants means solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

    f) settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings; or

    g) birds, vermin, rodents, insects or domestic animals.

    If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

9. Vandalism and malicious mischief if you have failed to secure the property and conduct periodic inspections of the interior and exterior.

Under items 2 through 9, any ensuing loss not excluded is covered.

CGI 02 (12/06)                                    2

## GENERAL EXCLUSIONS

A. We do not cover loss resulting directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss:

1) **Ordinance or Law,** meaning the enforcement of any ordinance, regulation or law regulating the construction, repair, demolition, occupancy, sale or relocation of the dwelling or Other Structure unless specifically provided under this Certificate.

2) **Earth Movement,** including but not limited to earthquake, land shock waves or tremors before, during or after a volcanic eruption, volcanic ash, landslide, rockslide, mine subsidence, mud flow, earth sinking, rising or shifting. We do cover direct loss that follows caused by fire or explosion.

3) **Water,** meaning:

   a) flood, surface water, waves, tidal wave or overflow of a body of water. We do not cover spray from any of these, whether or not driven by wind;

   b) water which backs up through sewers or drains or which overflows from a sump; or

   c) water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a dwelling or Other Structure, or sidewalk, driveway, foundation, swimming pool or Other Structure.

We do cover direct loss that follows caused by fire or explosion.

4) **Power Interruption,** meaning the interruption of power or other utility service if the interruption takes place away from the requested location, we will pay only for loss caused by the ensuing peril.

5) **Neglect,** meaning neglect to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Peril Insured Against.

6) **War,** including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

7) **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of the Conditions.

8) **Intentional Act,** meaning an action by or at the direction of you or any borrower committed with the intent to cause a loss or damage. This exclusion applies even if the person committing the act is insane, intoxicated or otherwise impaired if a person without that impairment would have committed such an act with the intent to cause loss or damage.

B. We do not insure for loss to property caused by any of the following. However, any ensuing loss to property not - excluded or excepted in this Certificate is covered:

1) **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph A. above to produce the loss;

2) **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body.

3) **Faulty, inadequate or defective:**

   a) planning, zoning, development, surveying, siting;
   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c) materials used in repair, construction, and renovation or remodeling: or
   d) maintenance; of part or all of any property whether on or off the insured property.

CGI 02 (12/06)                                         3.

## CONDITIONS

1. **Certificate Period.** This Certificate applies only to loss or damage which occurs while the coverage is in effect.

2. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   (a) for an amount greater than your and the mortgagor's interest in the property covered; or
   (b) for more than the Limit of Recovery that applies.

3. **Concealment or Fraud.** This entire Certificate is void if you or the mortgagor has intentionally concealed or misrepresented any material fact or circumstance relating to any aspect of this insurance or acted fraudulently or make false statements relating to any aspect of this insurance, whether before or after a loss. Such acts or act by the mortgagor will bar recovery by any person except as provided in this Certificate with respect to your interest.

4. **Your and the Mortgagor's Duties After Loss.** In case of a loss to which this insurance may apply, you and the mortgagor shall see that the following duties are performed:

   (a) give us immediate written notice;
   (b) protect the property from further damage, making necessary and reasonable repairs to protect the property, and keep an accurate record of repair expenditures. If you or the mortgagor fail to do so, we will not pay for any further damage. We will not reimburse for the costs of repairs unless records and receipts are provided;
   (c) make a list of all damaged or destroyed property showing in detail quantities, costs, actual cash value, amount of loss claimed and any other information we may require. Attach all bills, receipts and related documents that substantiate the figures in the list;
   (d) send to us within 60 days after loss the above list and a proof of loss signed and sworn to by you and the mortgagor, including:

      1) the time and cause of loss;
      2) the interest of you, the mortgagor and all others in the property;
      3) all encumbrances on the property;
      4) other insurance which may cover the loss;
      5) changes in title, use occupancy or possession of the property, and
      6) if required, any plans and specifications of the damaged buildings.

   (e) exhibit the damaged property to us or our representative as often as may be required;
   (f) as often as we may require, submit to examinations under oath by any person named by us and sign the transcript of the examinations;
   (g) produce for examination, with permission to copy, all records and documents that we may require;
   (h) in the event of a loss by theft, vandalism or malicious mischief, report the occurrence to the police immediately.

5. **Loss Settlement.** Covered property losses are settled as follows:

   a) Other Structures that are not buildings are settled at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace;
   b) Roofs (except for fire peril), carpeting, domestic appliances, awnings, outdoor equipment, whether or not attached to buildings, and outdoor antennas, at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace;
   c) Buildings under Coverage A or B:

      1) at repair or replacement cost without deduction for depreciation, but not exceeding the smaller of the following amounts:
         a. the repair or replacement cost of that part of the building damaged using commonly used building materials to place the property in a habitable condition for use on the same premises; or
         b. the amount actually and necessarily spent to repair or replace the damaged building.

      2) If you decide not to repair or replace the damaged property, at our option, we may make settlement on an

actual cash value basis. You may make claim within 180 days after the loss for any additional payment on a repair or replacement cost basis.

We may at our option replace the property with property of similar kind, quality and value. If as the result of your loss we pay in cash or by replacement an amount equal to the actual cash value of the property before the loss, at our option, we have the right to take legal title to the property.

6. **Loss to a Pair, Set, Series of Objects or Interior or Exterior Panels.** In case of loss to a part of a pair, set, series of objects, pieces or panels, either interior or exterior, we may, at our option:

   a) repair or replace any part to restore the property to actual cash value before the loss; or
   b) pay the difference between the actual cash value of the property before and after the loss; or
   c) pay the reasonable cost of providing a substitute to match the remainder of the property as closely as possible.

We cannot guarantee the availability of parts or of replacements. We will not be obligated to repair or replace the entire pair, set of series of objects, piece or panel when a part is lost or damaged.

7. **Glass Replacement.** Covered loss to glass shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

8. **Appraisal.** If you and we fail to agree on the amount of loss, either can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

9. **Subrogation.** You or the mortgagor may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If an assignment is sought, you and the mortgagor shall sign and deliver all related papers and cooperate with us in any reasonable manner.

10. **Suit Against Us.** No action shall be brought unless there has been compliance with the Certificate provisions and the action is started within one year after the loss.

11. **Loss Payment.** We will adjust any loss with you and the mortgagor. We will pay you to the extent of your interest in the property. You hereby direct that any benefits due which are in excess of your interest in the property be paid to the mortgagor. Payment for loss will be made within 60 days after we receive a proper proof of loss and
    a) we reach an agreement with you; or
    b) there is an entry of final judgment; or
    b) there is a filing of an appraisal award with us.

12. **Abandonment of Property.** We need not accept any property abandoned by you or the mortgagor.

13. **No Benefit to Bailee.** Regardless of any other provision of this Certificate, we will not honor an assignment nor extend coverage to a bailee. A bailee is a person or entity to whom you or the mortgagor has given possession of insured property.

14. **Cancellation.**
    a) You may cancel this Certificate at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. The date of cancellation may be no more than 120 days prior to the date of notification to us, without our approval.

    b) We may cancel this Certificate by giving you 30 days notice in writing of the date cancellation takes effect, with the exception of cancellation for nonpayment of premium which shall be a minimum of 10 days advance written notice. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

CGI 02 (12/06)                                    5

c) When this Certificate is cancelled, the premium paid for coverages beyond the date of cancellation will be refunded. The return premium will be pro rata.

d) If the return premium is not refunded with the notice of cancellation or when this Certificate is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

15. **Non- Renewal.** We may elect not to renew this Certificate. We may do so by delivery to you or mailing to you at your mailing address shown in the Declarations, written notice at least 10 days before the expiration date of this Certificate. Proof of mailing shall be sufficient proof of notice. Our failure to send such a notice within the time prescribed obligates us to renew coverages if you pay the premium before the expiration date.

16. **Liberalization Clause.** If we adopt any revision which would broaden the coverage under this Certificate without additional premium within 60 days prior to or during the Certificate period, the broadened coverage will immediately apply to this Certificate.

17. **Waiver or Change of Certificate Provisions.** A waiver or change of any provision of this Certificate must be in writing by us to be valid.

18. **Assignment.** Assignment of this Certificate shall not be valid unless we give our written consent.

19. **Your Interest.**

a) Your interest will not be impaired by any act or neglect of the mortgagor, provided you:

1) notify us of any change in occupancy, ownership, or substantial change in risk as soon as you become aware of such change; and

2) pay any premium when due under this Certificate.

b) If we pay you for any loss and do not pay the mortgagor,

1) we are subrogated to all of your rights granted under the mortgage on the property and may require a partial assignment of the mortgage to the extent of payment made: or

2) at our option, we may pay you the whole principal on the mortgage. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the debt.

Subrogation will not impair your right to recover the full amount of your claim.

20. **Nuclear Hazard Clause.**

a) "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b) Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

c) This Certificate does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

21. **Other Insurance. THIS INSURANCE IS EXCESS INSURANCE.** If there is any other valid and collectible insurance which would attach had the insurance provided under this Certificate had not been effected, this insurance shall apply only as excess insurance and in no event as contributing insurance, and then only after all other insurance has been exhausted.

(1) by rain, snow, sand or dust, whether driven by wind or not unless the building (s) covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct action of wind or hail and then shall be liable for loss to the interior of the building(s) or the property covered therein as may be caused by rain, snow, sand or dust entering the building (s) through openings in the roof or walls made by direct action of wind or hail; or

(2) by water from sprinkler equipment or from other piping, unless such equipment or piping is damaged as a direct result of wind or hail.

   a)  We shall not be liable for hailstorm or hail damage to the following property:

      1)  windmills, wind pumps or their towers;
      2)  crop silos;
      3)  metal smokestacks; or
      4)  when outside of buildings,
         (a)  awnings of fabric or slat construction, canopies of fabric or slat construction, including their supports,
         (b)  radio or television antennas, including their lead-in wiring, masts or towers.

4. **Smoke,** meaning sudden and accidental damage from smoke, other than smoke from agricultural smudging or industrial operations.

5. **Explosion,** including direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom.

   a)  We shall not be liable for loss by explosion of steamboilers, steam pipes, steam turbines or steam engines, if owned by, leased by or operated under the control of the mortgagor.
   b)  The following are not explosions within the intent or meaning of these provisions:
     (1)  shock waves caused by aircraft; generally known as "sonic boom",
     (2) electric arcing,
     (3) rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown,
     (4) water hammer,
     (5) rupture or bursting of water pipes,
     (6) rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water,
     (7) rupture, bursting or operation of pressure relief devices.

6. **Riot, Riot Attending A Strike or Civil Commotion,** including direct loss by acts of striking employees of the owner or tenant(s) of the described building (s) while occupied by said striking employees and shall also include direct loss from pillage and looting occurring during and at the immediate place of a riot, riot attending a strike or civil commotion.

7. **Aircraft or Vehicles,** meaning only direct loss resulting from actual physical contact of an aircraft or a vehicle with the property covered, except that loss by aircraft includes direct loss by objects falling therefrom. Underwriters shall not be liable for loss:

   a)  by any vehicle owned or operated by a mortgagor or by any tenant of the described premises;
   b)  by any vehicle to fences, driveways, walks; or
   c)  to any aircraft or vehicle including its contents other than stocks of aircraft or vehicles in process of manufacture or for sale,

8. **Vandalism or Malicious Mischief,** meaning only the willful and malicious damage to or destruction of the property covered. Underwriters shall not be liable for loss:

   a)  to glass (other than glass building blocks) constituting part of a building, structure or an outside sign;
   b)  by pilferage, theft, burglary or larceny, except Underwriters shall be liable for willful damage to the building(s) covered caused by burglars in gaining entrance to or exit from the building(s) or any part of the building(s);
   c)  if the described building (s) had been vacant beyond a period of 30 consecutive days immediately preceding the loss, unless Underwriters has been notified of such vacancy, the appropriate premium has been paid therefor and you have secured the property and conducted periodic inspections of the interior and exterior. ("Vacant" means containing no contents or only minimal contents pertaining to operations or activities customary to occupancy of the building).

## SECTION V - EXCLUSIONS

1) **Electrical Apparatus:** Underwriters shall not be liable for any loss resulting from any electrical injury or disturbance to electrical appliances, devices, fixtures or wiring caused by electrical currents artificially generated unless fire as insured against ensues.

2) **Nuclear Clause** (Not applicable in New York): The word "fire" in this Certificate or endorsements attached hereto is not intended to and does not embrace nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and loss by nuclear reaction or nuclear radiation or radioactive contamination is not intended to be and is not insured against by this Certificate or said endorsements, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by 'fire' and other perils  insured against by this Certificate or said endorsements; however, subject to the foregoing and all provisions of this Certificate, direct loss by 'fire' resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Certificate.

3) **Nuclear Clause** (Applicable in New York): This Certificate does not cover loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination, all whether directly or indirectly resulting from an insured peril under this Certificate.

4) **Nuclear Exclusion** (Not applicable in New York); (this clause applies to all perils insured against hereunder except the perils of fire and lightning, which are otherwise provided for in the Nuclear clause above): Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing is not insured against by this Certificate, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by any of the perils insured against by this Certificate; and nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, is not "explosion" or "smoke".

5) **Ordinance or Law,** meaning the enforcement of any ordinance, regulation or law regarding the construction, repair, demolition, occupancy, sale or relocation of the property unless specifically provided under this Certificate.

6) **Power Failure:** We shall not be liable for loss caused directly or indirectly by the interruption of power or other utility service furnished to the described premises if the interruption takes place away from the described premises. If a Peril Insured Against ensues on the described premises, we shall be liable for only its proportion of loss caused by the ensuing peril.

7) **War Risk:** War, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act of a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

8) **Water,** meaning:

   a) **Flood,** surface water, waves, tidal wave or overflow of a body of water we do not cover spray from any of these, whether or  not driven by wind;

   b) **Water** which backs up through sewers or drains; or

   c) **Water** below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building. We do cover direct loss that follows caused by fire or explosion.

9) **Earth Movement,** including but not limited to earthquake, land shock waves or tremors before, during or after a volcanic eruption, volcanic ash, landslide, rockslide, mud flow, earth sinking, rising or shifting. We do cover direct loss that follows caused by fire or explosion.

10) **Neglect,** meaning neglect to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Peril Insured Against.

11) **Intentional Act,** meaning an action by or at the direction of you or any borrower committed with the intent to cause a

CGI 03 (12/06)                                    3

# GENERAL PROPERTY AMENDED FORM

## AGREEMENT

We will provide the insurance described in this Certificate in return for the premium and compliance with all applicable provisions of this Certificate.

## DEFINITIONS

Throughout this Certificate, "you" and "your" refer to the Named Insured Mortgagee shown in the Declarations. "I", "We", "us" and "our" refer to Underwriters providing this insurance.

## SECTION I - PROPERTY COVERED

The insurance under this Certificate covers "Building (s)" in accordance with the following description. This insurance does not cover land:

Coverage A -Building(s): Building(s) or structure(s) shall include attached additions and extensions; fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building; yard fixtures; personal property of the mortgagor used for the maintenance or service of the described building (s), including fire extinguishing apparatus, outdoor furniture, floor coverings and appliances for refrigerating, ventilating, cooking, dishwashing and laundering (but not including other personal property in apartments or rooms furnished by the mortgagor as landlord); all while at the described location(s).

Debris Removal: This insurance covers expense incurred in the removal of debris of the property covered, which may be occasioned by loss caused by any of the perils insured against in this Certificate.

The total liability under this Certificate for both loss to property and debris removal expense shall not exceed the amount of insurance applying under this Certificate to the property covered.

## SECTION II- PROPERTY NOT COVERED

This Certificate does not cover:

1) outdoor signs, whether or not attached to a building or structure;
2) outdoor trees, shrubs and plants;
3) outdoor swimming pools; fences; piers, wharves and docks, beach or diving platforms or appurtenant retaining walls not constituting a part of buildings; walks, roadways and other paved surfaces.

## SECTION III - DEDUCTIBLE CLAUSE

A deductible of $500 shall apply to each covered peril or occurrence, except for the peril of Vandalism and Malicious Mischief to a vacant property for which a deductible of $1,000 shall apply.

## SECTION IV- PERILS INSURED AGAINST

This Certificate insures against all direct loss caused by:

1) **Fire or Lightning.**
2) **Removal,** meaning loss to the property covered hereunder while being removed or removed from the premises endangered by the perils insured against. The insurance is in effect for only 5 days at each proper place to which such property shall necessarily be removed for preservation from the perils insured against. The amount of insurance provided shall be the same proportion as the property removed bears to all property covered by this insurance.
3) **Windstorm or Hail,** excluding loss caused directly or indirectly by frost or cold weather, or ice (other than hail, snow or sleet, whether driven by wind or not.
    a) We shall not be liable for loss to the interior of the building(s) or the property covered therein caused:

CGI 03 (12/06)                                        1

loss or damage. This exclusion applies even if the person committing the act is insane, intoxicated or otherwise impaired if a person without that impairment would have committed such an act with the intent to cause loss or damage.

## SECTION VI - CONDITIONS

1) **Certificate Period.** This Certificate applies only to loss which occurs while the coverage is in effect.

2) **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a) for an amount greater than your and the mortgagors interest in the property covered; or
   b) for more than the Limit of Recovery that applies.

3) **Concealment of Fraud.** This entire Certificate is void if you or the mortgagor has intentionally concealed or misrepresented any material fact or circumstance relating to any aspect of this insurance or acted fraudulently or made false statements relating to any aspect of this insurance, whether before or after a loss. Such acts or act by the mortgagor will bar recovery by any person except as provided in this Certificate with respect to your interest.

4) **Your and the Mortgagor's Duties After Loss.** In case of a loss to which this insurance may apply, you and the mortgagor shall see that the following duties are performed:

   a) give us immediate written notice;
   b) protect the property from further damage, making necessary and reasonable repairs to protect the property, and keep an accurate record of repair expenditures. If you or the mortgagor fail to do so, we will not pay for any further damage. We will not reimburse for the costs of repairs unless records and receipts are provided;
   c) make a list of all damaged or destroyed property showing in detail quantities, costs, actual cash value, amount of loss claimed and any other information we may require. Attach all bills, receipts and related documents that substantiate the figures in the list;
   d) send to us within 60 days after loss the above list and a proof of loss signed and sworn to by you and the
   e) mortgagor, including:
      1) the time and cause of loss;
      2) the interest of you, the mortgagor and all others in the property;
      3) all encumbrances on the property;
      4) other insurance which may cover the loss;
      5) changes in title, use, occupancy or possession of the property; and
      6) if required, any plans and specifications of the damaged buildings.
   f) exhibit the damaged property to us or our representative as often as may be required; as often as we may require, submit to examinations under oath by any person named by us and sign the transcript of the examinations;
   g) produce for examination, with permission to copy, any records and documents that we may require;
   h) in the event of a vandalism or malicious mischief loss, report the occurrence to the police immediately.

5) **Loss Settlement.** Covered property losses are settled as follows:
   a) All property except Tenant's Improvements and Betterments at actual cash value except as provided below or by endorsement.
   b) Tenant's Improvements and Betterments:
      (1) If repaired or replaced at the expense of you or the mortgagor within a reasonable time after loss, the actual cash value of the damaged or destroyed improvements and betterments limit.
      (2) If not repaired or replaced at the expense of you or the mortgagor within a reasonable time after loss, that proportion of the original cost at the time of installation of the damaged or destroyed property which the unexpired term of the lease or rental agreement, whether written or oral, in effect at the time of loss bears to the periods from the date such improvements or betterments were made to the expiration of the lease.

6) **Other Insurance.** THIS INSURANCE IS EXCESS INSURANCE. If there is any other valid and collectible insurance which would attach if the insurance provided under this Certificate had not been effected, this insurance shall apply only as excess insurance and in no event as contributing insurance, and then only after all other insurance has been exhausted.

CGI 03 (12/06)                                      4

7) **Appraisal.** If you and we fail to agree on the amount of loss, either can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

8) **Subrogation.** You or the mortgagor may waive in writing before a loss all rights of recovery against any person. If not waived; we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If an assignment is sought, you and the mortgagor shall sign and deliver all related papers and cooperate with us in any reasonable manner.

9) **Suit Against Us.** No action shall be brought unless there has been compliance with the Certificate provisions and the action is started within one year after the loss.

10) **Loss Payment.** We will adjust any loss with you and the mortgagor. We will pay you to the extent of your interest in the property. You hereby direct that any benefits due which are in excess of your interest in the property be paid to the mortgagor. Payment for loss will be made within 60 days after we receive a proper proof of loss and
   a) we reach an agreement with you; or
   b) there is an entry of final judgment; or
   c) there is a filing of an appraisal award with us.

11) **Abandonment of Property.** We need not accept any property abandoned by you or the mortgagor.

12) **No Benefit to Bailee.** Regardless of any other provision of this Certificate, we will not honor an assignment nor extend coverage to a bailee. A bailee is a person or entity to whom you or the mortgagor have given possession of insured property.

13) **Cancellation.**
   You may cancel this Certificate at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. The date of cancellation may be no more than 120 days prior to the date of notification to us, without the approval of Underwriters.

   a) We may cancel this Certificate by giving you 30 days notice in writing of the date cancellation takes effect, with the exception of cancellation for nonpayment of premium which shall be a minimum of 10 days advance written notice. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.
   b) When this Certificate is cancelled, the premium paid for coverages beyond the date of cancellation will be refunded. The return premium will be pro rata.
   c) If the return premium is not refunded with the notice of cancellation or when this Certificate is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

14) **Non-Renewal.** We may elect not to renew this Certificate. We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice at least 10 days before the expiration date of this Certificate. Proof of mailing shall be sufficient proof of notice. Our failure to send such a notice within the time prescribed obligates us to renew coverages if you pay the premium before the expiration date.

15) **Liberalization Clause.** If we adopt any revision which would broaden the coverage under this Certificate without additional premium within 60 days prior to or during the Certificate period, the broadened coverage will immediately apply to this Certificate.

16) **Waiver or Change of Certificate Provisions.** A waiver or change of any provision of this Certificate must be in writing by us to be valid.

17) **Assignment.** Assignment of this Certificate shall not be valid unless we give our written consent.

CGI 03 (12/06)                                         5

18) Your Interest.

    a) Your interest will not be impaired by any act or neglect of the mortgagor, provided you:

        1) notify us of any change in occupancy, ownership, or substantial change in risk as soon as you become aware of such change; and

        2) pay any premium when due under this Certificate.

    b) If we pay you for any loss and do not pay the mortgagor, we are subrogated to all of your rights granted under the mortgage on the property and may require a partial assignment of the mortgage to the extent of payment made.

    c) At our option, we may pay you the whole principal on the mortgage. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the debt.

Subrogation will not impair your right to recover the full amount of your claim.

## SECTION VII - OTHER PROVISIONS

1. **Inspection of Property and Operations:** We and any person or organization making inspections on our benefit shall be permitted but not obligated to inspect the mortgagor's property and operations at any time. Neither our right and the right of any person or organization to make such inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulations.

2. **Protective Safeguards:** It is a condition of this insurance that you and the mortgagor shall maintain so far as is within your or the mortgagor's control such protective safeguards as are set forth by endorsement hereto. Failure to maintain such protective safeguards shall suspend this insurance, only as respects the location or situation affected, for the time of such discontinuance.

CGI 03 (12/06)           6

# UNDERWRITERS AT LLOYD'S, LONDON
*(Hereinafter called the Underwriters)*

# BLANKET MORTGAGE SECURITY CERTIFICATE
## GENERAL CHANGE ENDORSEMENT
(To be attached to Master Certificate)

Endorsement # 1

This endorsement, effective_____ September 8, 2014 _____forms a part of Master Certificate No. ____ 687500 ____

Issued to_____ Chalfonte Properties, Inc _____by the Underwriters.

In consideration of the basis upon which this Certificate has been issued it is agreed between the Named Insured Mortgagee and Underwriters that the following will apply to the Master Certificate.

This policy is subject to Michigan Surplus Lines Tax of 2% and Regulatory Fee of .5%.

The coverage described in this policy is hereby limited to the following locations only:

8643-55 E. Jefferson Avenue
Detroit, MI  48214

915 Fischer
Detroit, MI  48214

All other terms and conditions of this Certificate shall remain in full force and effect.

In witness whereof, Underwriters have caused this endorsement to be executed by a duly authorized representative.

_____
Authorized Representative

CGI 05 (10/08)

## UNDERWRITERS AT LLOYD'S, LONDON
*(Hereinafter called the Underwriters)*

# BLANKET MORTGAGE SECURITY CERTIFICATE
## GENERAL CHANGE ENDORSEMENT
(To be attached to Master Certificate)

Endorsement # 2

This endorsement, effective_____ September 8, 2014 _____forms a part of Master Certificate No. ____ 687500 ____

Issued to_____ Chalfonte Properties, Inc _____by the Underwriters.

In consideration of the basis upon which this Certificate has been issued it is agreed between the Named Insured Mortgagee and Underwriters that the following will apply to the Master Certificate.

## DEDUCTIBLE ENDORSEMENT

In consideration of the basis on which this Certificate has been issued and premiums collected, it is agreed between the Named Insured and the Underwriters that the deductible provision of the Blanket Mortgage Security Certificate is amended as follows:

E. 1.  Residential Property:

A deductible of $5,000.00 shall apply to each peril or occurrence, except for vandalism and malicious mischief for which a deductible of $5,000.00 shall apply.

2.  Commercial Property:

A deductible of $5,000.00 shall apply to each peril or occurrence, except for vandalism and malicious mischief for which a deductible of $5,000.00 shall apply.

3.  Mobile Homes:

A deductible of $5,000.00 shall apply to each peril or occurrence, except for vandalism and malicious mischief for which a deductible of $5,000.00 shall apply.

All other terms and conditions of this Certificate shall remain in full force and effect.

In witness whereof, Underwriters have caused this endorsement to be executed by a duly authorized representative.

_____
Authorized Representative

CGI 05 (10/06)

# UNDERWRITERS AT LLOYD'S, LONDON

*(Hereinafter called the Underwriters)*

# BLANKET MORTGAGE SECURITY CERTIFICATE
## GENERAL CHANGE ENDORSEMENT
(To be attached to Master Certificate)

Endorsement # 3

This endorsement, effective ____September 8, 2014____ forms a part of Master Certificate No. ___687500___

Issued to_____Chalfonte Properties, Inc._____by the Underwriters.

In consideration of the basis upon which this Certificate has been issued it is agreed between the Named Insured and the Underwriters that the following will apply to the Master Certificate.

The following entity is added as an additional named insured as their interest may appear:

Talmer Bank & Trust
PO Box 2568
Coppell, TX 75019

The above mentioned named insured is for the following locations only:

8643-55 E. Jefferson Avenue
Detroit, MI 48214

915 Fischer
Detroit, MI 48214

All other terms and conditions of this Certificate shall remain in full force and effect.

In witness whereof, the Underwriters have caused this endorsement to be executed by a duly authorized representative.

_____
Authorized Representative

CGI 05 (10/06)

## UNDERWRITERS AT LLOYD'S, LONDON
*(Hereinafter called the Underwriters)*

# BLANKET MORTGAGE SECURITY CERTIFICATE
## CONTINGENT PERSONAL PROPERTY ENDORSEMENT
(To be attached to Master Certificate)

This endorsement, effective ____September 8, 2014____ forms a part of Master Certificate No.____687500____

issued to_____Chalfonte Properties, Inc._____ by the Underwriters.

In consideration of the basis upon which this Certificate has been issued it is agreed between the Named Insured and the Underwriters that the following will apply to the Master Certificate

CONTINGENT PERSONAL PROPERTY

In consideration of additional premium(s) collected, $____0.52____per hundred per year, coverage is extended to include the personal property of the mortgagor when specifically requested by the Named Insured Mortgagee.

The limit of liability for this coverage will not exceed 50% of the stated value of the mortgaged property coverage.

The personal property covered must be usual to the occupancy of the mortgaged property as a residence as coverage does not extend to:

1. valuable papers, currency, gold, silver, and notes;
2. animals, birds, or fish;
3. aircraft and parts;
4. motor vehicles, other than motorized equipment used to service residence;
5. boats, other than rowboats and canoes;
6. furs, fur garments, jewels, jewelry, and pearls;
7. business property of any kind;
8. firearms.

The coverage pertains only to personal property located at the mortgaged property residence at the time of loss and does not include theft.

Personal Property coverage is valued on an actual cash basis at the time of loss but not exceeding the amount necessary to repair or replace.

Automatic coverage does not apply to collateral insured under this endorsement.

THIS COVERAGE PERTAINS TO RESIDENTIAL PROPERTY OR MOBILE HOMES ONLY

All other terms and conditions of this Certificate shall remain in full force and effect.

In witness whereof, the Underwriters have caused this endorsement to be executed by a duly authorized representative.

_____
Authorized Representative

CGI 06 (10/08)

# Exhibit B